J-S07003-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GEORGE DENTON MARTIN, | |
| Appellant | No. 1441 MDA 2014 |

Appeal from the PCRA Order Entered July 24, 2014
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0004746-2012

BEFORE:  BENDER, P.J.E., OLSON, J., and OTT, J.

MEMORANDUM BY BENDER, P.J.E.:               **FILED FEBRUARY 11, 2015**

Appellant, George Denton Martin, appeals from the post-conviction court's July 24, 2014 order denying his petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Additionally, Appellant's counsel, MaryJean Glick, Esq., has filed a petition to withdraw from representing Appellant, along with an **Anders**[1] brief. While a **Turner/Finley**[2] no-merit letter is the appropriate filing when counsel seeks to withdraw on appeal from the denial of PCRA relief, we will accept Attorney Glick's **Anders** brief in lieu of a **Turner/Finley** no-merit letter. **See Commonwealth v. Widgins**, 29 A.3d 816, 817 n.2 (Pa. Super. 2011)

---

[1] **Anders v. California**, 386 U.S. 738 (1967).

[2] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (en banc).

("Because an *Anders* brief provides greater protection to a defendant, this Court may accept an *Anders* brief in lieu of a *Turner/Finley* letter.") (citation omitted). After careful review, we affirm the PCRA court's order denying Appellant's petition, and grant Attorney Glick's petition to withdraw.

On February 27, 2013, Appellant entered a negotiated guilty plea to indecent assault of a person less than 13 years of age, involuntary deviate sexual intercourse with a child, corruption of minors, and unlawful contact with a minor. Pursuant to the plea agreement, Appellant was sentenced to an aggregate term of 8 to 20 years' incarceration. Appellant did not file a direct appeal.

Instead, on March 25, 2014, Appellant filed a counseled PCRA petition presenting multiple claims of plea counsel's ineffectiveness.[3] On May 21, 2014, the PCRA court held an evidentiary hearing, at which Appellant and his plea counsel, Raymond Tarnowski, Esq., testified. On July 24, 2014, the PCRA court entered an order, accompanied by a detailed opinion, denying Appellant's petition. Attorney Glick subsequently entered her appearance on Appellant's behalf and filed a timely notice of appeal. However, on October 30, 2014, Attorney Glick filed with this Court a petition to withdraw as counsel and an *Anders* Brief, asserting that Appellant had no non-frivolous issues to raise on appeal. Again, as a *Turner/Finley* letter is the

_____

[3] When Appellant filed his PCRA petition, and at the subsequent PCRA hearing, he was represented by Joseph A. Kalasnik, Esq.

appropriate filing when PCRA counsel seeks to withdraw, we will assess Attorney Glick's petition to withdraw and *Anders* brief under the dictates of *Turner/Finley*.

In *Turner*, our Supreme Court "set forth the appropriate procedures for the withdrawal of court-appointed counsel in collateral attacks on criminal convictions[.]" *Turner*, 544 A.2d at 927. The traditional requirements for proper withdrawal of PCRA counsel, originally set forth in *Finley*, were updated by this Court in *Commonwealth v. Friend*, 896 A.2d 607 (Pa. Super. 2006), *abrogated by* *Commonwealth v. Pitts*, 981 A.2d 875 (Pa. 2009),[4] which provides:

> 1) As part of an application to withdraw as counsel, PCRA counsel must attach to the application a "no-merit" letter[;]
>
> 2) PCRA counsel must, in the "no-merit" letter, list each claim the petitioner wishes to have reviewed, and detail the nature and extent of counsel's review of the merits of each of those claims[;]
>
> 3) PCRA counsel must set forth in the "no-merit" letter an explanation of why the petitioner's issues are meritless[;]
>
> 4) PCRA counsel must contemporaneously forward to the petitioner a copy of the application to withdraw, which must include (i) a copy of both the "no-merit" letter, and (ii) a statement advising the PCRA petitioner that, in the event the trial court grants the application of counsel to withdraw, the

---

[4] In *Pitts*, our Supreme Court abrogated *Friend* "[t]o the extent *Friend* stands for the proposition that an appellate court may *sua sponte* review the sufficiency of a no-merit letter when the defendant has not raised such issue." *Pitts*, 981 A.2d at 879. In this case, Attorney Glick filed her petition to withdraw and no-merit letter with this Court and, thus, our Supreme Court's holding in *Pitts* is inapplicable.

petitioner has the right to proceed pro se, or with the assistance of privately retained counsel;

5) the court must conduct its own independent review of the record in the light of the PCRA petition and the issues set forth therein, as well as of the contents of the petition of PCRA counsel to withdraw; and

6) the court must agree with counsel that the petition is meritless.

*Friend*, 896 A.2d at 615 (footnote omitted).

We have received Attorney Glick's petition to withdraw and a brief that we will treat as her no-merit letter. On pages 8 through 22 of her no-merit letter, Attorney Glick discusses the ineffectiveness claims Appellant raised in his PCRA petition, and explains why those claims are without merit. Additionally, in her petition, Attorney Glick has sufficiently evidenced the nature and extent of her review. She has also forwarded to Appellant a copy of her petition to withdraw and no-merit letter. Finally, Attorney Glick advised Appellant that he has the right to proceed with this appeal *pro se* or to hire new counsel. Therefore, we conclude that Attorney Glick has complied with the above-stated requirements for withdrawal.

Next, this Court must conduct its own independent review of the record in light of the issues presented in Appellant's PCRA petition. Therein, Appellant raised multiple ineffectiveness claims, including assertions that (1) plea counsel failed to properly investigate the case and potential defenses, and review that information with Appellant, prior to advising Appellant to enter a guilty plea; (2) plea counsel did not sufficiently investigate Appellant's history of depression and attention deficit hyperactivity disorder

- 4 -

(ADHD), which precluded Appellant from entering a voluntary, knowing, and intelligent plea; and (3) plea counsel failed to "understand and compensate for [Appellant's] naiveté as a traditional Mennonite regarding the court system and how [Appellant's] rights would be affected by various courses of conduct in the case[.]" PCRA Petition, 3/25/14, at 3-4 (unpaginated).

Appellant further claimed that he was extremely ill in the days leading up to the plea hearing, and that he also experienced "additional trauma" during that period because he was charged with other offenses and "incarcerated for the first time in his life…." *Id.* at 5 (unpaginated). Appellant argued that due to his illness and being charged with additional offenses, he asked his counsel to seek a continuance of the plea proceeding, but counsel refused. *Id.* Consequently, Appellant entered his plea simply "so he could obtain the rest and treatment that he required for his physical and mental condition[,]" resulting in an invalid plea. *Id.* at 6 (unpaginated). Appellant maintained that due to plea counsel's conduct in these regards, his guilty plea was invalid.

We have reviewed the certified record, the applicable law, and the thorough opinion of the Honorable Donald R. Totaro of the Court of Common Pleas of Lancaster County. Judge Totaro's well-reasoned decision accurately addresses the claims of ineffectiveness raised by Appellant in his PCRA petition, as well as the validity of Appellant's guilty plea as a whole. We conclude that Judge Totaro's determination that Appellant is not entitled to post-conviction relief is supported by the record and is free of legal error.

*See Commonwealth v. Anderson*, 995 A.2d 1184, 1189 (Pa. Super. 2010) ("Our standard of review of the denial of a PCRA petition is limited to examining whether the court's determination is supported by the evidence of record and free of legal error."). Accordingly, we adopt Judge Totaro's opinion as our own and affirm the order denying Appellant's PCRA petition on the grounds set forth therein. We also grant Attorney Glick's petition to withdraw.

Order affirmed. Petition to withdraw granted. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/11/2015

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA : 
: 
VS. :    NO.   4746-2012
: 
GEORGE DENTON MARTIN : 

## OPINION

BY TOTARO, J.

Presently before the Court is Petitioner George Denton Martin's ("Defendant") counseled petition under the Post Conviction Relief Act ("PCRA"). On February 27, 2013, Defendant appeared before the Honorable Judge Louis J. Farina and pled guilty to Indecent Assault (Person Less than 13),[1] Involuntary Deviate Sexual Intercourse with a Child,[2] Corruption of Minors,[3] and Unlawful Contact With Minor.[4] Pursuant to a negotiated plea agreement, Defendant is currently serving an aggregate term of not less than eight (8) years nor more than twenty (20) years imprisonment in a state correctional facility. (Commonwealth Exhibit #2). As part of the negotiated plea, the Commonwealth waived the mandatory minimum sentence of 10 years incarceration on the charge of IDSI With a Child. *Id.* Moreover, the Commonwealth agreed to concurrent sentences for the additional charges of Intimidation of a Witness and Terroristic Threats, based upon threats directed towards the child victim's family. *Id.*

---

[1] 18 Pa. C.S.A. § 3126(a)(7)

[2] 18 Pa. C.S.A. § 3123(b)

[3] 18 Pa. C.S.A. § 6301(a)(1)(ii)

[4] 18 Pa. C.S.A. § 6318(a)(1)

LANCASTER COUNTY, PA    2014 JUL 24 PM 3:38    CLERK OF COURTS

On March 25, 2014, Defendant, by his counsel, Joseph A. Kalasnik, Esquire, filed a Petition for Post-Conviction Collateral Relief alleging that trial counsel provided ineffective assistance of counsel for a myriad of reasons. As a result, Defendant claimed the truth-determining process was undermined such that no reliable adjudication of guilt or innocence could have taken place. Moreover, due to counsel's ineffectiveness Defendant's guilty plea was unlawfully induced under circumstances where it was likely the inducement caused him to plead guilty when he was in fact innocent. In their Response to the Petition For Post Conviction Collateral Relief, the Commonwealth agreed to the necessity of an evidentiary hearing.

Therefore, on May 21, 2014, the Court conducted an evidentiary hearing to address Defendant's allegation that Raymond Tarnowski, Esquire ("Trial Counsel") provided ineffective assistance of counsel. Following the Hearing, the record was transcribed and the issues were briefed by counsel for both parties. For the following reasons, the Court finds that trial counsel did not provide ineffective assistance of counsel, and therefore Defendant's PCRA claim will be denied.

A defendant seeking relief under the PCRA is eligible only if he shows by a preponderance of the evidence that: (1) he has been convicted of a crime under the laws of the Commonwealth of Pennsylvania and is currently serving a sentence of imprisonment, probation or parole for the crime; (2) his conviction has resulted from one of the enumerated errors listed in § 9543(a)(2); (3) he has not waived or previously litigated the issues he raises; and (4) the failure to litigate the issue prior to and during trial, or on direct appeal, could not have been the result of any strategic decision by counsel. 42 Pa. C.S.A. § 9543(a)(1)-(4).

2

To prevail on a claim alleging ineffective assistance of counsel, a defendant must prove that: (1) the underlying claim is of arguable merit, (2) counsel had no reasonable strategic basis for his or her action or inaction, and (3) but for the act or omission of counsel there is a reasonable probability that the outcome of the proceeding would have been different. *Commonwealth v. Kimball*, 724 A.2d 326, 333 (Pa. 1999); 42 Pa. C.S.A. § 9543(a)(2)(ii). Failure to prove any prong of this test will defeat an ineffectiveness claim. *Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014).

"Counsel is presumed effective, and [appellant] bears the burden of proving otherwise." *Commonwealth v. Fears*, 86 A.3d at 804 (quoting *Commonwealth v. Steele*, 961 A.2d 786, 796 (Pa. 2008)) (internal quotation marks omitted). Defense counsel is accorded broad discretion in determining trial tactics and strategy. *Commonwealth v. Fowler*, 703 A.2d 1027, 1029 (Pa. 1997). The applicable test is not whether alternative strategies were more reasonable employing a hindsight evaluation of the record, but whether counsel's decision had any reasonable basis to advance the interests of the defendant. *Commonwealth v. Speight*, 677 A.2d 317, 322 (Pa. 1996). The defendant carries the burden of proving that counsel did not act in his best interests. *Commonwealth v. Cook*, 676 A.2d 639, 647 (Pa. 1996).

Even if an underlying claim is of arguable merit, a defendant's claim of ineffective assistance of counsel will fail if that defendant fails to establish resulting prejudice. *Commonwealth v. Neal*, 713 A.2d 657, 662 (Pa. Super. 1998). The defendant must demonstrate that ineffective assistance of counsel so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Whitney*, 708 A.2d 472, 475 (Pa. 1998).

3

Petitioner in the instant case contends he should be allowed to withdraw his guilty plea and receive a new trial because his trial counsel was ineffective. Once a defendant has entered a guilty plea it is presumed that he was aware of his actions, and the burden of demonstrating involuntariness is upon him. *Commonwealth v. McCauley*, 797 A.2d 920, 922 (Pa. Super. 2001). A guilty plea is an acknowledgment by a defendant that he participated in the charged offense. *Commonwealth v. Zorn*, 580 A.2d 8, 9 (Pa. Super. 1990).

In order to withdraw a guilty plea under the PCRA, a defendant must show that ineffective assistance of counsel caused the petitioner to enter an involuntary plea of guilty. *Commonwealth v. Rathfon*, 899 A.2d 365, 369 (Pa. Super. 2006). Furthermore, to prove prejudice, appellant must prove "he would not have pled guilty and would have achieved a better outcome at trial." *Fears*, 86 A.3d at 807 (quoting *Commonwealth v. Mallory*, 941 A.2d 686, 703 (Pa. 2008) (internal quotation marks omitted).

As the Supreme Court of Pennsylvania recently noted in *Commonwealth v. Fears*:

> [a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as the basis for relief only if the ineffectiveness caused appellant to enter an involuntary or unknowing plea. In determining whether a guilty plea was entered knowingly and intelligently, a reviewing court must review all of the circumstances surrounding the entry of that plea.

*Fears*, 86 A.3d at 806-07 (quoting *Commonwealth v. Allen*, 732 A.2d 582, 587 (Pa. 1999)) (internal quotation marks omitted). The bottom line inquiry is whether the defendant understood what he was doing when he entered the guilty plea. *Commonwealth v. Blackwell*, 647 A.2d 915, 922 (Pa. Super. 1994) *overruled on other grounds, Commonwealth v. Taylor*, 65 A.3d 462, 467 n.4 (Pa. Super. 2013).

4

When determining whether a defendant has entered into a guilty plea knowingly, voluntarily and intelligently, the Court should consider the oral and written plea colloquy and off-the-record communications between the defendant and counsel. *Commonwealth v. Allen*, 732 A.2d 582, 588-89 (Pa. 1999). During a guilty plea, the court must conduct an inquiry with a defendant on the record which addresses the following: (1) does the defendant understand the nature of the charges; (2) is there a factual basis for the plea; (3) does the defendant understand his right to a jury trial; (4) does the defendant understand he is presumed innocent until proven guilty; (5) is the defendant aware of the permissible range of sentences; and (6) is the defendant aware the judge is not bound by the terms of any plea agreement. *Commonwealth v. Muhammad*, 794 A.2d 378, 383 (Pa. Super. 2002); *Commonwealth v. Hallock*, 722 A.2d 180, 182 (Pa. Super. 1998); Pa. R. Crim. P. 590 Comment. The express purpose for conducting this colloquy is to ensure a defendant understands the nature of the charges to which he is pleading guilty and the rights he is waiving by pleading guilty. *Commonwealth v. Carter*, 656 A.2d 463, 465 (Pa. 1995).

The questioning of a defendant may be conducted by the judge, an attorney for either party, or by written colloquy. *Commonwealth v. Harris*, 589 A.2d 264, 265 (Pa. Super. 1991). If the written colloquy is used, it must be completed and signed by the defendant and made part of the record. It must also be supplemented by some oral explanation. *Id.*

A defendant has the duty to truthfully answer all questions at the time of the guilty plea. *Commonwealth v. Vesay*, 464 A.2d 1363, 1368 (Pa. Super. 1983). Consistent with this principle, defendants are bound by the statements they make during their plea colloquy, and may not assert grounds for withdrawing the plea that contradict statements made when they pleaded guilty. *Commonwealth v. Stork*, 737 A.2d 789, 790-91 (Pa. Super. 1999); *Commonwealth v. Barnes*, 687 A.2d 1163, 1167 (Pa. Super. 1996).

5

In the present case, Defendant asserts that counsel's alleged ineffectiveness resulted in an unknowing and involuntary guilty plea. Specifically, Defendant alleges he did not understand the elements of the offenses to which he was pleading. However, the record demonstrates otherwise.

When considering the totality of circumstances surrounding Defendant's guilty plea in the present case, the Court would first note that there was a factual basis to support the charges against Defendant and the guilty pleas thereto. As the following guilty plea colloquy demonstrates, the Assistant District Attorney, Mr. Reeder, enumerated the facts for Count 1 and Count 2 of the Criminal Information, and Defendant admitted to those facts as follows:

| | |
|---|---|
| THE COURT: | All right. What are the facts? |
| MR. REEDER: | Your honor, in December of 2011, the defendant licked the vagina of a juvenile female, E.C., whose date of birth was 4/12/03. |
| THE COURT: | Is that true? |
| DEFENDANT: | Yes, sir. |
| THE COURT: | Mr. Tarnowski, did you explain to your client what the elements of indecent assault charges were to a person less than 13 that the Commonwealth would have to prove at trial to convict him? |
| MR. TARNOWSKI: | Yes, I did, Your Honor. We went over the statute for each of the offenses today. And I asked Mr. Martin if he had any questions. He did not. He said he understood those. |
| THE COURT: | So you understand then that the Commonwealth would have to prove that? They would have to prove that you intended to have this kind of indecent contact with the child and you, in fact, had it. Do you understand that? |
| DEFENDANT: | Yes, sir. |
| THE COURT: | And you did it by using your tongue? |
| DEFENDANT: | Yes, sir. |

(N.T. Guilty Plea at 7-8) [hereinafter "N.T.G.P."]. Thereafter, the prosecutor recited specific allegations regarding the three remaining counts, at which time Defendant admitted to committing all said offenses. *Id.* at 8-11. In fact, at one point Defendant corrected the Court to

6

clarify that he committed the act of Indecent Assault for the sexual arousal of the victim rather than for himself. *Id.* Later during the guilty plea hearing, Defendant stated as follows:

| | |
|---|---|
| DEFENDANT: | I am sorry. I'm sorry for what I did. I know it was wrong, and I've been open and honest through all of this. |
| THE COURT: | What made you report it? |
| DEFENDANT: | Because I was seeking help for - - |
| THE COURT: | For what? |
| DEFENDANT: | For doing this. |
| THE COURT: | And you know what you did and you did something wrong? |
| DEFENDANT: | Yes, sir. |
| THE COURT: | And it bothered you? |
| DEFENDANT: | Yes, sir. |

(N.T.G.P. at 19).

As previously noted, a defendant has the duty to truthfully answer all questions at the time of the guilty plea. *Commonwealth v. Vesay, supra.* Furthermore, defendants are bound by the statements they make during their plea colloquy and may not assert grounds for withdrawing the plea that contradict statements made when they pleaded guilty. *Commonwealth v. Stork, supra.* Consequently, Defendant is bound by the admissions he made at the guilty plea hearing.[5]

Furthermore, while establishing a factual basis for the plea, the Court also reviewed with Defendant the maximum jail sentences for each count. (N.T.G.P. at 4-5). The Court advised Defendant that he did not have to plead guilty, but he could plead not guilty and proceed to trial. *Id.* at 5-6. The Court informed Defendant that if the case proceeded to trial the Commonwealth would have the burden of proving his guilt beyond a reasonable doubt to the unanimous satisfaction of 12 jurors. *Id.* at 6, 12. Defendant was told he would be presumed innocent if the

---

[5] In addition to his admission of guilt at the guilty plea hearing, Defendant testified at his PCRA hearing and acknowledged that he was the initial person who brought these offenses to the attention of the police department. (N.T. PCRA Hearing at 45) [hereinafter "N.T. PCRA"]. Thereafter, Defendant met a second time with police and gave a confession which resulted in the filing of criminal charges. *Id.* at 46-48. Additionally, Defendant informed his attorney of the meeting he had with police and of the confession he provided to them. *Id.*

7

case went to trial. *Id.* at 12. The Court reviewed with Defendant his right to call witnesses and/or cross-examine Commonwealth witnesses if the case went to trial. *Id.* The Court also made very clear to Defendant that by pleading guilty he was waiving all of those rights. *Id.* at 13.

At all times during the guilty plea hearing Defendant stated he understood his rights, and further acknowledged he was waiving those rights. When asked whether he was forced or threatened in any way to get him to plead guilty, Defendant replied "No, sir." (N.T.G.P. at 7-8). When asked if he knew what a guilty plea meant, Defendant stated "It means that I'm an honest person and I admit guilt." *Id.* at 6. Defendant informed the Court that the guilty plea was voluntary, knowing and intelligent on his part. *Id.* at 7.[6]

Moreover, during the guilty plea hearing trial counsel informed the Court that he went over all details of the seven-page Guilty Plea Colloquy and Post-Sentence Rights form with Defendant prior to their appearing before the Court for the guilty plea and sentencing. (N.T.G.P. at 13; Commonwealth Exhibit #1). Counsel was satisfied that Defendant understood those rights. *Id.* Further, Defendant's counsel signed the Guilty Plea Colloquy and Post-Sentence Rights form representing he reviewed the document in full with Defendant, it was his belief Defendant fully comprehended the consequences of pleading guilty, and Defendant was pleading guilty of his own free will.[7] *Id.*

---

[6] During the guilty plea hearing, the trial court actually discussed with Defendant the possibility that Defendant would choose to appeal on the ground that the plea was not knowing or voluntary once he was sent to state prison. (N.T.G.P. at 13-14). Judge Farina then explained that he was conducting a thorough colloquy with Defendant to ensure the guilty plea was knowing, voluntary and intelligent, such that any claim to the contrary would not succeed on appeal. *Id.* at 14-15. Defendant acknowledged he understood, and stated he still wished to plead guilty. *Id.* at 15-16.

[7] At the PCRA hearing, trial counsel testified that he reviewed the guilty plea colloquy verbally with Defendant line-by-line and answered any questions Defendant may have had. (N.T. PCRA at 88).

8

Additionally, Defendant acknowledged at the guilty plea hearing that prior to this on-the-record colloquy conducted by the Court he reviewed with his attorney and signed the seven-page Guilty Plea Colloquy and Post-Sentence Rights form containing a thorough list of his pre-trial, trial, and post-sentence rights. (N.T.G.P. at 11-12; Commonwealth Exhibit #1). Defendant further stated he understood all of the rights contained therein and had no questions about those rights.[8] (N.T.G.P. at 12). Defendant also signed a Plea Agreement form listing the specific charges and the sentence to be imposed. (Commonwealth Exhibit #2).[9]

Defendant further claims that trial counsel failed to adequately review his legal rights. However, in the Guilty Plea Colloquy and Post-Sentence Rights form, Defendant clearly stated he did have sufficient time to review all information contained therein with his attorney. (Commonwealth Exhibit #1). Further, when discussing Defendant's limited appeal rights during the guilty plea hearing, the following exchange occurred:

| | |
|---|---|
| THE COURT: | You might complain about your attorney and say he is ineffective. Have you been happy with his services? |
| DEFENDANT: | Yes, sir. |
| THE COURT: | Any complaints about his services? |
| DEFENDANT: | No, sir. |
| THE COURT: | So, in other words, you plead guilty, chances are, you are not going to be able to do anything about it on appeal, and you are going to do 8 to 20 years. Do you understand? |

---

[8] In the signed Guilty Plea Colloquy and Post-Sentence Rights form, Defendant acknowledged he understood he did not have to plead guilty, he had the right to a trial by jury, the Commonwealth would be required to prove his guilt beyond a reasonable doubt at trial, he reviewed the sentencing guidelines and maximum sentences with his attorney, he was giving up the right to a jury trial by pleading guilty, he was entering into a negotiated plea agreement with the District Attorney, he understood the terms of the plea agreement, it was his decision to plead guilty, he was not threatened or forced to plead guilty, he was making this decision of his own free will, and he understood his guilty plea would have the same effect as a conviction by judge or jury. (Commonwealth Exhibit #1). Furthermore, Defendant stated he was voluntarily pleading guilty with a full understanding of his rights as explained in the document. *Id.*

[9] At the PCRA hearing, Defendant acknowledged reviewing the Guilty Plea Colloquy and Post-Sentence Rights form with trial counsel before pleading guilty. (N.T. PCRA at 51). Defendant also admitted placing his signature on the last page of the colloquy and on the plea agreement form. *Id.* at 51-53.

9

DEFENDANT:      Yes, sir.
THE COURT:      Knowing all that, do you still want to plead guilty?
DEFENDANT:      Yes, sir.

(N.T.G.P. at 14-16).

As fact-finder in a proceeding for post conviction relief that is based on a claim of ineffective assistance of counsel, the credibility of witnesses remains exclusively within the province of the hearing court. *Commonwealth v. Pate*, 617 A.2d 754, 760 (Pa. Super. 1992) (citing *Commonwealth v. Moore*, 468 A.2d 791, 795 (Pa. Super. 1983)). An appellate court, therefore, "must give great weight to the findings of a lower court concerning the credibility of witnesses in a post-conviction proceeding." *Commonwealth v. Dupert*, 725 A.2d 750, 755 (Pa. 1999) (citing *Commonwealth v. Madison*, 462 A.2d 228, 231 (Pa. 1983)).

After careful review of the record in the present case, the evidence clearly establishes that Defendant's guilty plea was knowing, intelligent, and voluntary on his part. More specifically, the record shows that Defendant had a full understanding of his pre-trial, trial, and post-sentence rights, Defendant understood the charges and the sentence to which he was pleading guilty, and Defendant was not induced into pleading guilty. Defendant's testimony at the PCRA hearing to the contrary was simply not credible.[10] For these reasons, Defendant's claim of an unknowing and involuntary plea must fail.[11]

---

[10] During the PCRA hearing, Defendant stated he provided false answers on the colloquy and to the Court during the guilty plea hearing because he wanted to "get out of here" so he could get rest and rejuvenate himself. (N.T. PCRA at 58-59). Defendant's explanation is wholly lacking in credibility.

[11] At the PCRA hearing, Defendant claimed trial counsel failed to investigate his mental health history of major depression and ADHD, which could have affected his judgment on the day of the guilty plea because he was not taking proper medications. (N.T. PCRA at 19-23). However, in the seven-page Guilty Plea Colloquy and Post-Sentence Rights form Defendant was asked specifically if he was now or had previously been treated for mental illness, and Defendant answered that the question was not applicable. (Commonwealth Exhibit #1). When asked if any illness or its treatment would affect his ability to understand the questions on the form or while he was in court on that date, Defendant again

10

Defendant further contends that trial counsel was ineffective for failing to properly investigate the case or review the discovery file. Moreover, Defendant alleges trial counsel had only minimal contact with Defendant. As a result, there was little or no meaningful discussion about possible defense strategies or other options for defending against the charges.

However, regarding the contact Defendant had with trial counsel, Defendant's wife, Joanna Martin, testified at the PCRA hearing and stated she and Defendant spent between 2 and 3 hours in person with trial counsel or an attorney with counsel's firm discussing the case prior to the day of the guilty plea. (N.T. PCRA at 108). This did not include the additional time counsel spent with Defendant on the day of the guilty plea. *Id.*

Furthermore, with regard to case preparation, trial counsel testified at the PCRA hearing that at no time did Defendant claim he did not commit the crimes or indicate he wanted to proceed to trial. (N.T. PCRA at 98-99). Rather, Defendant was looking for the best possible deal.[12] *Id.* The Court finds the testimony of trial counsel to be credible in this regard.

---

replied that the question was not applicable. *Id.* Furthermore, during the PCRA hearing, Defendant testified that he did not in any way indicate he had been diagnosed with ADHD or depression when he filled out the colloquy on the day of the guilty plea. (N.T. PCRA at 60-61).

Defendant also suggests his guilty plea was not knowing or intelligent because he grew up in a traditional Mennonite household. (N.T. PCRA at 23-28). However, Defendant acknowledged he could read, write, speak, and understand the English language. (Commonwealth Exhibit #1; N.T. PCRA at 60). The transcript from the guilty plea hearing does not support Defendant's assertion in this regard. Further, this Court had ample opportunity to observe Defendant during testimony at the PCRA hearing, where it was abundantly clear Defendant did not demonstrate any naivete about the court system or his legal rights.

Defendant further alleges on the day of the guilty plea he was fatigued and in poor physical and mental condition due to recent illness and an arrest on new charges, which affected his ability to think clearly. (N.T. PCRA at 32-38, 76). Because trial counsel would not pursue a continuance, Defendant had no choice but to enter a guilty plea. *Id.* at 38-39. However, trial counsel testified credibly that on the day of the guilty plea Defendant's demeanor was fine, he asked good questions, he raised legitimate concerns, and he understood everything. *Id.* at 87-88. Defendant's testimony to the contrary was not credible.

[12] Trial counsel testified that he was aware of the police investigation and evidence in possession of the Commonwealth. (N.T. PCRA at 82). However, because Defendant never disputed the allegations and

11

To that end, trial counsel was able to negotiate with the Commonwealth such that the Commonwealth agreed to waive the mandatory minimum jail sentence of 10 years in exchange for a sentence of 8-20 years incarceration if Defendant elected to plead guilty. (N.T. PCRA at 83-84). Moreover, trial counsel and the Commonwealth agreed that if Defendant pleaded guilty to all charges then any sentence imposed for the new criminal charges of Terroristic Threats and Intimidation of a Witness would run concurrent to the sentences on the sexual assault offenses.[13] *Id.* at 87. According to trial counsel, Defendant was very pleased with this result. *Id.* at 87.[14]

Based upon overwhelming evidence of guilt, of which Defendant and trial counsel were both aware, and because trial counsel was confident there were no legal issues that arose under the circumstances, counsel advised Defendant he would be better off taking the plea agreement than taking his chances at trial. (N.T. PCRA at 90-91). Nonetheless, trial counsel also discussed

his only goal was to get the best possible deal, counsel did not watch any video recorded police interviews of Defendant or the victim that may have existed. *Id.* at 98-99.

[13] The Plea Agreement form signed by Defendant states clearly that the "Commonwealth waives the mandatory 10 to 20 year sentence in return for an agreement to 8 to 20 years." (Commonwealth Exhibit #2). The Plea Agreement form also states "the Commonwealth agrees that the Defendant's Intimidation and Terr. Threats case shall be concurrent to this case, and shall not increase his maximum sentence." *Id.* Additionally, during the guilty plea hearing the prosecutor stated "[T]he Commonwealth waives the mandatory 10 to 20 years' sentence . . . in return for the agreement of 8 to 20 years. Furthermore, we noted this on our plea agreement form, and I'll ask the defendant sign this acknowledging there is a new charge against the defendant that was filed just two days ago, intimidation and terroristic threats involving witnesses in this case. The Commonwealth agrees that by this plea, the Commonwealth will not - - that any sentence on that case would be concurrent with this case . . . ." (N.T.G.P. at 3).

[14] Trial counsel testified he was advised by the prosecutor that Defendant was incarcerated on new charges for allegedly sending threatening text messages to the victim's family saying that if he goes to jail "there are going to be funerals." (N.T. PCRA at 85). Due to the new charges, Defendant was reluctant to proceed with the guilty plea as scheduled, and trial counsel informed Defendant that was certainly within his rights. *Id.* at 86. In fact, trial counsel told Defendant he could proceed to trial or ask for a continuance. *Id.* at 86-87. However, the prosecutor informed trial counsel that if Defendant did not plead guilty on that same date the mandatory minimum sentence would be invoked. *Id.* at 87. Moreover, trial counsel eventually got the prosecutor to agree to run the sentence on the new case of terroristic threats and intimidation of a witness concurrently with the sexual assault sentence. *Id.* Trial counsel relayed this information to Defendant, which swayed Defendant into pleading guilty. *Id.*

12

with Defendant his rights. *Id.* at 83, 88-90. For example, trial counsel advised Defendant he had the right to proceed to trial in an attempt to convince a jury that Defendant's confession was coerced and the child victim was lying. *Id.* at 91. Trial counsel also discussed with Defendant his potential defenses, which were limited, but informed Defendant he had a right to assert them. *Id.* at 83. Ultimately, Defendant made the decision to plead guilty. *Id.* at 87.

In conclusion, Defendant's guilty plea was entered knowingly, intelligently, and voluntary. Moreover, trial counsel had a strategic basis for his action, by negotiating a guilty plea which called for a sentence below the mandatory minimum of 10 years incarceration. Counsel also negotiated concurrent sentences for the new criminal charges of Terroristic Threats and Intimidation of a Witness.

Furthermore, Defendant has failed to demonstrate it is reasonably probable that, but for trial counsel's alleged ineffectiveness, he would have proceeded to trial and achieved a better outcome, particularly where Defendant provided a confession to police. In fact, upon conviction after trial Defendant would have been faced with a mandatory minimum sentence of ten years in jail and the potential for consecutive jail time on the new charges of Terroristic Threats and Intimidation of a Witness.

Pursuant to Pa.R.Crim.P. 908, the Court finds and concludes, resolving all issues of credibility against Defendant, that Defendant is not entitled to post-conviction relief and no purpose would be served by any further proceedings.

Accordingly, the Court enters the following:

13

## ORDER

**AND NOW**, this 24th day of July, 2014, upon consideration of the Petition for Post Conviction Collateral Relief filed by George Denton Martin, after the presentation of testimony at an Evidentiary Hearing held on May 21, 2014, and after review of briefs filed by counsel for both parties, it is hereby ORDERED and DECREED that the Petition is Denied.

Petitioner is hereby advised that he has the right to appeal this order dismissing his Petition for Post Conviction Collateral Relief to the Superior Court of Pennsylvania within thirty (30) days of the date of entry of this order by the Clerk of Courts.

I certify this document to be filed in the Lancaster County Office of the Clerk of the Courts.

BY THE COURT:

_____
DONALD R. TOTARO, JUDGE

ATTEST:

Joshua G. Persons
Clerk of the Courts

COPIES TO:

Maria A. Cusick, Esquire, Assistant District Attorney
Joseph A. Kalasnik, Esquire, Attorney for Defendant
George Denton Martin, #KY-1870, SCI Somerset, 1590 Walters Mill Road, Somerset, PA 15510, Certified Mail, Return Receipt Requested

14